**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| JOSEPH DEION PAGE, | ) | |
| | ) | Case No. 3:26-cv-38 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| SHAWN[1] PHILLIPS, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM & ORDER

Joseph Deion Page, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") housed at the Morgan County Correctional Complex ("MCCX"), filed a pro se civil rights complaint in the United States District Court for the Middle District of Tennessee (Doc. 1). After granting Plaintiff's *in forma pauperis* application and dismissing Defendants TDOC, the Tennessee Board of Parole and Pardons, and Commissioner Frank Strada, the Middle District transferred the action to this Court. (*See* Docs. 18, 19.)

Plaintiff's complaint (Doc. 1) is now before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it states a justiciable claim. Also before the Court are Plaintiff's motions for a preliminary injunction (Doc. 3), to appoint counsel (Doc. 10), to require the United States Marshal Service ("USMS") to serve process (Doc. 11), to supplement his complaint (Doc. 13), and to toll the statute of limitations (Doc. 22). For the reasons set forth below, the Court will grant Plaintiff's motion to supplement his complaint (Doc. 13), deny his remaining motions

---

[1] The Clerk will be **DIRECTED** to update the docket to reflect the correct spelling of Defendant Phillips' first name as "Shawn." (*See* Doc. 18, at 8 (granting motion at Doc. 16).)

(Doc. 3, 10, 11, 22), order Plaintiff to complete the portion of his complaint demanding relief, permit certain federal claims to proceed against Defendants Stacey Oakes and Brandy Hutson in their individual capacities, and dismiss all remaining claims and Defendants.

## I. PLAINTIFF'S MOTIONS

### A. Preliminary Injunction

In his "Motion for Preliminary Injunction[,]" Plaintiff asks the Court to enjoin TDOC to release Plaintiff on parole because (1) he is housed in conditions imposing a "significant and atypical hardship"; (2) his unidentified "serious medical needs" are not being met in TDOC custody; and (3) "[t]wo ranking officers unconstitutionally deprived Plaintiff of his liberty by conspiring on a course of action with the knowledge and intention that their actions would cause injury to Plaintiff."  (Doc. 3, at 1–2.)

Plaintiff's motion is governed by Rule 65 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 65.  Because Plaintiff filed the instant motion before any Defendant has been served, the Court treats it as a motion for a temporary restraining order ("TRO").[2]  *See* Fed. R. Civ. P. 65(b).

In determining whether to grant a TRO, courts balance the following factors:  "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction."  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).  The first factor, likelihood of success on the merits, is the most important factor and typically determines the outcome of the motion.  *See Obama for*

---

[2] The Court notes that the factors to be considered in determining whether to issue a TRO or preliminary injunction are the same.  *See, e.g.*, *Workman v. Bredesen*, 486 F.3d 896, 904–05 (6th Cir. 2007).

*America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).  Even where success on the merits is shown, however, injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Rather, it "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citation omitted).

Here, Plaintiff is essentially asking the Court to provide him relief as though he has already prevailed on the merits of this case.  However, the purpose of injunctive relief is to maintain the parties' positions until they can be heard on their merits at trial.  *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  And Plaintiff's motion contains no facts that would suggest that he has a strong likelihood of success on the merits.  In fact, in the instant motion, he offers no facts describing his medical needs, current conditions, or alleged deprivation of liberty at all.  Thus, at this juncture, Plaintiff's ability to prove any constitutional violation at all is speculative.  Therefore, Plaintiff has not demonstrated a strong likelihood of success on the merits of his claims.

Because Plaintiff has failed to demonstrate a likelihood of success on the merits of his claim, the Court cannot assume he will face irreparable harm absent injunctive relief.  *See, e.g.*, *Overstreet*, 305 F.3d at 578 (denying plaintiff's argument that he is entitled to presumption of irreparable harm absent showing of likelihood of success on the merits).

Additionally, there is a strong public interest in leaving the administrative matters of state prisons in the hands of jail officials.  *McCord v. Maggio*, 910 F.2d 1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances).  In fact, "[a]ny interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public

welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights." *Johnson v. Payton*, No. 13-11437, 2013 WL 1843979, *3 (E.D. Mich. Apr. 10, 2013) (citing *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988)), *report and recommendation adopted*, No. 13-11437, 2013 WL 1843971 (E.D. Mich. May 1, 2013). Therefore, the remaining factors also weigh against the grant of injunctive relief in this cause, and Plaintiff's motion for same (Doc. 3) will be denied.[3]

### B.   Appointment of Counsel

Plaintiff requests the Court appoint him counsel to represent him in this action due to his lack of higher education and legal knowledge, the complex nature of his claims, his limited access to the law library, and the fact that he is an Illinois resident seeking to raise claims under both federal and Tennessee law. (*See* Doc. 10.)

"The court *may* request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis added). However, "[a]ppointment of counsel in a civil case is not a constitutional right[,]" but rather a "privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (citations omitted). In determining whether "exceptional circumstances" exist, the Court considers "the complexity of the case and the ability of the plaintiff to represent himself." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d at 606).

Plaintiff's protestations to the contrary, his claims are not legally nor factually complex. And his filings to date demonstrate that he is capable of understanding and participating in the

---

[3] Moreover, Plaintiff cannot seek release from prison in a § 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

litigation process.  Moreover, indigency, limited access to legal resources, and unfamiliarity with the law are conditions common among prisoners.  Accordingly, there are no exceptional circumstances warranting the appointment of counsel in this action, and Plaintiff's motion for the appointment of counsel (Doc. 10) will be denied.

### C. Service by the USMS

Plaintiff asks the Court to order the USMS to serve process in this action.  (Doc. 11.) Because Plaintiff is proceeding *in forma pauperis*, the Court is required to order the USMS to serve any process that may be issued in this case.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).  Therefore, this motion (Doc. 11) will be denied as moot.

### D. Supplemental Complaint

Plaintiff filed a "Motion for Supplement[al] Jurisdiction" seeking to supplement his complaint with allegations of events that occurred on December 8, 2025.  (Doc. 13.)  Because these supplemental events occurred after Plaintiff filed his initial complaint, the Court finds Plaintiff's request well taken, and it will be granted.  *See* Fed. R. Civ. P. 15(d) (recognizing court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

### E. Tolling the Statute of Limitations

Plaintiff moves the Court to toll the statute of limitations as to his claims "under the continued violation doctrine."  (*See* Doc. 22.)  However, "Tennessee courts do not recognize the continuing violation doctrine other than in the employment context."  *Griffin v. Haywood Cnty.*, No. 1:23-CV-02142-STA-jay, 2023 WL 8242470, at *3 n.3 (W.D. Tenn. Nov. 28, 2023) (citations omitted).  Accordingly, Plaintiff's motion to toll the statute of limitations in this action based on the continuing violation theory (Doc. 22) will be denied.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a "less stringent" standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

### B. Plaintiff's Allegations

On an undisclosed date, Plaintiff was sentenced to the custody of the TDOC to serve a six-year sentence for theft (Doc. 1, at 11).

On March 30, 2024, Defendant Kendra Sharp allegedly issued Plaintiff a false disciplinary charge of "'creating a disturbance' knowing it would lead to [P]laintiff being placed in segregated confinement." (*Id.* at 8.) Plaintiff's television was confiscated. (*Id.*) Plaintiff was not given the chance to be released from segregation until April 9, 2024. (*Id.*)

On April 20, 2024, Disciplinary Board Chairperson, Defendant Elizabeth Gibson, denied Plaintiff's presence at a hearing where he was found not guilty of the disciplinary charge. (*Id.*)

On May 6, 2024, Plaintiff was initially released from segregation only to be sent back twenty (20) minutes later "due to the actions of [D]efendant Hannah Ratliff. Plaintiff was found not guilty." (*Id.*)

Because of his placement in segregation, Plaintiff lost his "spot in welding class due to days missed." (*Id.*)

Allegedly, "Defendant Phillips and his staff er[]ected barriers hindering [P]laintiff from timely bringing a non-frivolous suit[] before the Court." (*Id.*)

On June 12, 2024, Plaintiff "was sent to segregated confinement pending an investigation for participating in gang activity and fighting." (*Id.*) On June 21, 2024, Defendant Gibson allegedly coerced Plaintiff into pleading guilty "by failing to inform him of the full punishment to be given." (*Id.*)

Between June 26, 2024, and August 1, 2024, Defendant Justin Ball "issued at least 10 consecutive disciplinary reports," served as "the only witness[,]" and allegedly influenced the Disciplinary Board's outcome of the reports he issued. (*Id.* at 9.) Defendant Alan Bunch "signed off" on most of Defendant Ball's disciplinary reports. (*Id.*)

On August 8, 2024, Defendant Ball allegedly told Plaintiff, "You ain[']t no gangster, you's [sic] a damned snitch" in front of the pod. (*Id.*) On August 26, 2024, Defendant Gibson allegedly told Plaintiff in front of the entire pod, "Just shut the hell up Page, we all know you're

a liar and a snitch." (*Id.*) A slice of cheese was allegedly placed on Plaintiff's door, "labeling him a 'rat,'" and the Administration allowed it to remain there for over a month. (*Id.*) Plaintiff requested and received protective custody because of these comments. (*Id.* at 10.) As a result, he claims he "has served more than 365 days unconstitutional punitive segregation, all while inflicting atypical and significant hardships." (*Id.*)

On August 18, 2024, Plaintiff slipped in the shower, injuring his neck and back, "due to not being housed in [an] ADA compli[a]nt shower that meets his handicap requirements." (*Id.* at 11.)

Defendants Shawn Phillips, Stacey Oakes, and Zachary Pounds are wardens but have allegedly "refused to intervene in the unconstitutional behavior of their subordinates, despite pleas and complaints by letter, grievance, appeals[,] and in person." (*Id.* at 9.) Plaintiff has submitted "over 100 grievances and appeals" to Defendants Strada and Phillips seeking help. (*Id.* at 10.) Plaintiff has "submitted multiple grievances and appeals" requesting transfer, but allegedly, "many of [Plaintiff's] grievances have gone missing." (*Id.* at 11.)

Defendant Gibson "refused to disqualify herself as a hearing officer" in disciplinary proceedings. (*Id.* at 9.)

On October 30, 2024, Plaintiff's parole application was denied due to his "recent disciplinary history." (*Id.*) Plaintiff submitted a sworn declaration to the Parole Board explaining the "unconstitutional misuses of [the] disciplinary procedure." (*Id.*)

Plaintiff also claims he was targeted for disciplinary sanctions because he is from Chicago, Illinois. (*Id.* at 10.)

On January 5, 2025, Plaintiff "filed a grievance criticizing security of the HSU." (*Id.*) Plaintiff further claims that Defendant Associate Warden Zachary Pounds "retaliated against [Plaintiff] because of this protected activity." (*Id.*)

Defendant Brandy Hutson, the CCO of high security inmates, "went months without giving [inmates] anything to clean cells despite cells being flooded with raw sewage and feces[-]infused water." (*Id.*)  Plaintiff, "a devout Muslim," was allegedly "forced to go days without praying," in violation of his free exercise rights and the Religious Land Use And Institutionalized Persons Act ("RLUIPA").  (*Id.* at 10–11.)

Plaintiff further alleges that Associate Warden Stacey Oakes does not allow "Muslim clergy access like Christian clergy."  (*Id.* at 11.)

In preparation for litigation, Plaintiff claims he requested TDOC's food and medical-provider contacts.[4]  (*Id.*)  Plaintiff claims his request was denied because he "was unable to pay."  (*Id.*)

In addition to the injuries alleged above, Plaintiff alleges Defendants' actions caused Plaintiff to:  (1) be placed on suicide protocol because he contemplated suicide at least three times; (2) lose wages due to his placement in a high security unit and denial of parole; (3) lose future wages due to his inability to become a trained welder; (4) miss "at least 100" "Salaat due to [D]efendants not providing cleaning chemicals for months;" (5) be assaulted by inmates, which Defendants refused "to write . . . up;" (6) be falsely imprisoned twice; (7) be injured in his prospective rap business; (8) experience humiliation, psychological injuries, and emotional distress.  (*Id.* at 13–14.)

Aggrieved, Plaintiff filed the instant action on or about November 12, 2025, seeking relief under 42 U.S.C. § 1983, Title VI, RLUIPA, the ADA, and Tennessee tort laws.  (*See id.* at 4.)  Plaintiff's complaint does not contain a specific request for relief.

---

[4] The transferring court found Plaintiff's complaint to request TDOC's "contracts" (*see* Doc. 18, at 5).  The Court merely notes the difference; it is irrelevant to the disposition of Plaintiff's claims.

On December 10, 2025, Plaintiff filed a motion to supplement his complaint, alleging that after he mailed "several civil dockets to Defendants" five days prior. (Doc. 13, at 1.) On December 8, 2025, Plaintiff states he attempted to "voice his concerns about the unsanitary food conditions" to Defendant Stacey Oakes. (*Id.*) Defendant Oakes allegedly told Plaintiff "that if he didn[']t be quiet he would take the phone from him." (*Id.*) When Plaintiff told Defendant Oakes that he was simply "concerned about his health[,]" Defendant Oakes allegedly unplugged the phone and ordered Plaintiff to turn it over. (*Id.*) Plaintiff complied, but "feels Defendant Stacey Oakes retaliated against Plaintiff for naming [Oakes] in this lawsuit." (*Id.*)

### C.       Analysis

#### i.       *42 U.S.C. § 1983*

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. With the exceptions of Defendants Gibson and Ball, Plaintiff does not designate whether he is suing Defendants in their official capacities, their individual capacities, or in both capacities (*See* Doc. 1, at 3–5.) Generally, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his [or her] official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). Nevertheless, out of an abundance of caution, the Court will presume Plaintiff intends to sue all Defendants in both their individual and official capacities.

#### a.       Official-Capacity Claims

As an initial matter, Plaintiff cannot sustain suit against the TDOC, the Tennessee Board of Parole and Pardons, the MCCX, the Morgan County Disciplinary Board, or against the TDOC Defendants in their official capacities, because these Defendants are not "persons" subject to suit

under § 1983.[5] *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Law Offices of Christopher S. Lucas and Assocs.*, 320 F. Supp. 2d 291, 296 (M.D. Penn. 2004) ("[W]e hold that the Disciplinary Board is not a 'person' who can be sued within the meaning of § 1983."); *Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir. 1977) (finding the Pennsylvania Board of Parole and Pardon "cannot be sued for it is not a 'person' within the meaning of § 1983").

Moreover, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, Plaintiff's § 1983 claims against Defendants in their official capacities are impermissible and will be dismissed.

b. Individual-Capacity Claims

To state a claim against a defendant in his or her personal capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved

---

[5] Defendants TDOC, the Tennessee Board of Parole and Pardons, and Frank Strada were previously dismissed from this action [Doc. 18].

in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (2018) (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

### 1. Untimely Claims

As correctly determined by the Middle District, "[P]laintiff's claims arising from events alleged to have occurred prior to November 12, 2024[,] are subject to dismissal as untimely." (Doc. 18, at 7.) This is because Tennessee's one-year statute of limitations for personal injury actions is applicable to Plaintiff's § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann.* § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

Plaintiff "filed" this action when he submitted it to MCCX officials for mailing, presumably on November 12, 2025, the date it was stamped as outgoing mail (*see* Doc. 2, at 4); *see also Houston v. Lack*, 487 U.S. 266, 273 (1988) (holding pro se prisoner's notice of appeal filed at moment of delivery to prison authorities for forwarding to district court); *Cook v. Stegall*,

295 F.3d 517, 521 (6th Cir. 2002) (holding federal habeas application is deemed filed when handed to prison authorities for mailing).

Here, any injuries surrounding Plaintiff's disciplinary charges/proceedings prior to November 12, 2024, the confiscation of his television, Plaintiff's initial placement in protective custody, the loss of his placement in welding class, being labeled a snitch, his injury in the shower, and the denial of his parole application were all discoverable and all occurred more than one year prior to the date he filed his complaint on November 12, 2025. Accordingly, these claims will be dismissed as untimely.[6] *See In re Royal Manor Mgmt., Inc.*, 652 F. App'x 330, 339–40 (6th Cir. 2016) (noting that "courts have no authority" to modify "statute-of-limitations deadlines"). And as the only specific allegations against Defendants Sharp, Gibson, Ball, Bunch, and Ratliff involve time-barred claims, all claims against them will be dismissed.

### 2. *Conclusory Claims*

Plaintiff's complaint makes the following conclusory allegations: (1) Plaintiff suffered discriminatory disciplinary sanctions because he is from Chicago; (2) Defendant Pounds "retaliated against" Plaintiff in an unidentified manner because Plaintiff filed a grievance on January 5, 2025, "criticizing security of the HSU;" (3) many of Plaintiff's grievances are missing; (4) Plaintiff's requests for information from TDOC about food and medical providers were denied because of his inability to pay; and (5) Defendants "refused to write it up" after

---

[6] The Court has already found Plaintiff cannot rely on the continuing violation doctrine to toll the limitations period. *See supra* Part I.E. And in his complaint, Plaintiff attempts to vitiate the statute of limitations by alleging that Defendant Phillips and his staff "er[]ected barriers hindering" Plaintiff from bring suit. (*See* Doc. 1, at 8, 14.) But, as the transferring court found, "Tennessee does not recognize the doctrine of equitable tolling in civil cases[,]" and Plaintiff did not properly invoke the recognized tolling doctrines of equitable estoppel or fraudulent concealment so as to toll the limitations period. (Doc. 18, at 6–7 (citing *Redwing v. Cath. Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 460–62 (Tenn. 2012).)

Plaintiff was assaulted by inmates  (*See* Doc. 1, at 10–11, 13–14.)  Such "'naked assertion[s]' devoid of further factual enhancement" are impermissibly conclusory, and they will be dismissed.  *See Iqbal*, 556 U.S. at 678 (holding pleading standards require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]").

### 3.      Grievances

Plaintiff alleges that Defendant Phillips has not assisted Plaintiff despite Plaintiff having submitted over 100 grievances and appeals seeking help.  (*See* Doc. 1, at 10.)  However, inmates have no constitutional right to a grievance procedure, and thus, they have no protected interest in having their grievances resolved.  *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding jail staff's disregard of grievances did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure")); *see also Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").  And Defendant Phillips cannot otherwise be held liable for failing to provide Plaintiff with a remedy through the grievance procedure, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  Therefore, this claim will be dismissed.

### 4.      Supervisory Liability

Plaintiff maintains that Defendants Philips, Oakes, and Pounds, all of whom are wardens, have "refused to intervene in the unconstitutional behavior of their subordinates, despite pleas and complaints."  (Doc. 1, at 9.)

However, as the Court has noted, liability will not attach to a Defendant unless Plaintiff plausibly alleges that the particular Defendant's own conduct has violated his constitutional rights. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 676) ("A critical aspect of the § 1983 . . . universe is that to be held liable, a plaintiff must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'")). There is no respondeat superior liability in § 1983. *See Iqbal*, 556 U.S. 662, 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Instead, to hold a supervisory official responsible in a § 1983 action, a plaintiff must plausibly allege "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal citation omitted).

Here, Plaintiff has not identified any behavior by a subordinate that Defendants Phillips, Oakes, or Pounds either "encouraged" or "directly participated in[.]" (*Id.*) And, as the Court found above, no supervisory Defendant can be held liable for failing to respond to or remedy a prisoner's grievance. *See, e.g.*, *Shehee*, 199 F.3d at 300. Therefore, without factual allegations to support "the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, Plaintiff's supervisory liability claims against Defendants Phillips, Oakes[7], and Pounds will be dismissed.

---

[7] However, the Court does permit certain claims to proceed against Defendant Oakes, *see infra* Part II.C.1.b.vi, but it does so based on Plaintiff's allegations of Defendant Oakes' independent conduct, not because of his participation in a subordinate's actions.

*5.     Retaliation*

Plaintiff contends that Defendant Oakes confiscated Plaintiff's phone after Plaintiff filed this lawsuit and attempted to voice concerns about "unsanitary food conditions[,]" which Plaintiff "feels" is retaliation for Plaintiff naming Oakes as a Defendant in this lawsuit.  (Doc. 13, at 1.)

To state a viable retaliation claim, Plaintiff must show that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To satisfy the "adverse action" requirement, a prison inmate must show more than de minimis harm by establishing that the "adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  *Id.* at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  Plaintiff's subjective belief that he has been retaliated against is insufficient to state a claim.  *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

A prisoner's right to file non-frivolous grievances or access the courts on his own behalf is protected conduct under the First Amendment, provided the prisoner exercises that right in accordance with legitimate prison regulations and/or penological objectives.  *Hill*, 630 F.3d at 472; *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000).  Therefore, the Court presumes Plaintiff engaged in protected conduct by filing grievances and seeking access to the courts.

However, Plaintiff has not provided any facts to support his belief that Defendant Oakes' actions were motivated by a retaliatory animus.  *See Hill*, 630 F.3d at 475 (holding "conclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient" to state a § 1983 claim); *see also Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (affirming

16

district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening") (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001))).

Moreover, the allegedly adverse action suffered by Plaintiff, i.e., the confiscation of his phone, is not the kind of harassment that would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  And, perhaps most importantly, Plaintiff cannot sustain a retaliation claim when the adverse action was triggered by his noncompliance with applicable rules and laws. *See, e.g.*, *Bruggeman v. Paxton*, 15 F. App'x 202, 204 (6th Cir. 2001) (rejecting equal protection claim where inmate's pleadings show disciplinary action was based on his violation of prison rules).  Possession of a telephone in a TDOC facility is a felony.  *See* Tenn. Code Ann. § 39-16-201.  Therefore, Plaintiff has failed to allege facts that would support a plausible retaliation claim, and the Court will dismiss this claim.

### 6. Matters to Proceed

However, the Court finds that a liberal construction of Plaintiff's complaint permits the inference of plausible free exercise and RLUIPA claims against Defendants Oakes and Hutson. (*See* Doc. 1, at 10–11.)  Closely related to these claims is Plaintiff's allegation that Defendant Hutson denied him cleaning supplies for "months" despite his cell "being flooded with raw sewage and feces[-]infused water." (*Id.* at 10.)  Given these allegations, the Court also finds Plaintiff has stated a plausible conditions-of-confinement claim against Defendant Hutson.

However, Plaintiff's complaint does not comply with the Federal Rules of Civil Procedure, because it does not contain a demand for relief.  *See* Fed. R. Civ. P. 8(a)(3) (requiring

17

a pleading to contain "a demand for the relief sought").[8]  Accordingly, **within fourteen (14) days** of entry of this Memorandum and Order, Plaintiff will be ordered to append his complaint with a request for relief.  The Clerk will be directed to forward Plaintiff a copy of page of Plaintiff's form complaint (*see* Doc. 1, at 12), which Plaintiff will be ordered to fill out and return to the Court within fourteen (14) days.

### ii.      *State-Law Claims*

Plaintiff lists "breach of duty, negligent care, intentional infliction of emotional distress[,] and continuous tort" as claims he seeks to raise in this lawsuit.  (Doc. 1, at 4.)  The Court presumes these are the state-law claims Plaintiff referenced in his motion for the appointment of counsel.  (*See* Doc. 10, at 1–2.)  Tennessee employs a "liberal notice pleading standard," which requires a party "to provide notice of the issues presented to the opposing party and [the] court." *Webb v. Nashville Area Habitat for Humanity, Inc*., 346 S.W.3d 422, 426 (Tenn. 2011).  But because Plaintiff merely lists proposed causes of action without any supporting facts, there is no factual detail to provide notice of the specific conduct alleged to form the basis of the claim. And even under Tennessee's more liberal pleading standard, a plaintiff is still required "to state the facts upon which a claim for relief is founded."  *Id.* (citations and internal quotation marks omitted).  Plaintiff's complaint fails to do so, therefore, his claims under Tennessee Law will be dismissed.

## III.   CONCLUSION

For the reasons set forth above:

1.      The Clerk is **DIRECTED** to update the docket to reflect the correct spelling of Defendant Phillips' first name as "Shawn;"

2.      Plaintiff's motions for a preliminary injunction, to appoint counsel, and for the

---

[8] Plaintiff's motion for a preliminary injunction does seek release on parole (Doc. 3), but, as the Court has already noted, such a remedy is unavailable in these proceedings.

USMS to serve process (Doc. 3, 10, 11, 22) are **DENIED**, and his motion to file a supplemental complaint (Doc. 13]) is **GRANTED**;

3. Plaintiff has stated a plausible conditions-of-confinement claim against Defendant Hutson in her individual capacity and plausible First Amendment and RLUIPA claims against Defendants Hutson and Oakes in their respective individual capacities, and these claims will **PROCEED**;

4. The Clerk is **DIRECTED** to forward Plaintiff a copy of page of Plaintiff's form complaint requiring Plaintiff to state his requested relief (Doc. 1, at 12), which Plaintiff is **ORDERED** to complete and return to the Court **within fourteen days** of entry of this Order. Upon receipt of this completed section of Plaintiff's complaint, the Clerk is **DIRECTED** to file it as an attachment to the complaint;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Hutson and Oakes;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office **within twenty-one days** of entry of this Order;

7. At that time, assuming Plaintiff has submitted his completed request for relief, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed relief section of his complaint **or** the completed service packets, this action **will be** dismissed;

9. Defendants **SHALL** answer or otherwise respond to the complaint **within twenty-one days** from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10. All other claims and Defendants are hereby **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court **within fourteen days** of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

Case 3:26-cv-00038-TRM-DCP      Document 26      Filed 03/19/26      Page 20 of 20
PageID #: 43